Good morning, Your Honors. My name is Darrell Parker, and I represent the plaintiff and appellant in this case. And we are asking the Court to reverse the District Court's grant of summary judgment, both on the discrimination based on race claim and on the discrimination based on the retaliation claim. Title VII and 1981 are both statutes that prohibit discrimination and employment. And in that sense, the statutes are similar. But the text of each statute is different. And this Court, as well as many other courts, have stated that we must look to Title VII and the jurisprudence under Title VII in interpreting 1981. However, the two cases that primarily District Courts look at in interpreting Title VII is McDonnell-Douglas and Texas v. Berdeen. And both of those cases were decided when discrimination cases were decided. As a result, when cases come up before the District Court, the courts are analyzing the cases as if we have the burden of proof of proving discrimination at the summary judgment stage. The judges often say plaintiff has the burden of proving a prima facie case, but the defendant only has to come forth with evidence. His burden is one of production, not proof. And I would submit at the summary judgment stage, what the Court is trying to figure out is, is there enough evidence for the case to go to a jury? Is there a finding of fact that's in doubt? Yes. Is there — could a jury find facts a certain way? But I think what courts are doing is courts are looking at, well, I'm a reasonable judge, and am I being persuaded that this happened? But that's because Title VII cases for a long time were simply decided by courts. And since they're — since now we're dealing with a jury trial — I'm not totally sure why you're talking about this, because it seemed to me that the dispute here was more about pretext than about the prima facie case, which I think is where the issue you're talking about would play out. Except that courts, including the District Court in this case, are requiring plaintiff to prove that the reason for the decision is a lie. And I'm saying that's not the standard. The standard is whether or not a jury could look at the reason that was given and still determine whether or not discrimination took place or whether retaliation took place. And in this case — And that's about pretext. And that's about pretext. Pretext doesn't mean that the decision is a lie, because almost every employer can come up with a neutral, non-racial or non-discriminatory reason for its action. So proving it's a lie does not end the analysis. The analysis really is whether or not other evidence can show that this was not the true reason or even the real reason. Well, isn't this just a straight summary? Shouldn't this be just a straight summary judgment review? That is, was there a fact in dispute that needed to go to a fact finder and can't be decided at the summary judgment stage? Is that the rule? That's the rule that I believe should be the rule, but I don't think that's the rule that many district courts are using. Well, now, how in this case do we decide what rule this district judge used? I mean, we're not talking about what district courts plural do. We're talking about this case and this district judge. How would you argue that there was — that he violated his responsibilities in granting summary judgment because there was a material fact in dispute that had to go to a trier fact? Well, we have a — we have a correction officer who has an impeccable record. We have a correction officer who doesn't take time off, who doesn't use his sick leave, and is talking on the yard with another correction officer about why out of three — out of 25 to 33 officers, they're selecting the two African-American officers to say they're dirty with no evidence whatsoever that they're dirty. So naturally, he's going to believe race must be a factor because there's no other explanation for how he's being treated. So — That's — — so did — the district judge did not believe that as a fact, and you say he should have? Or a finder of fact should? I'm saying that the district — once you have evidence that discrimination can be taken place, we don't have to persuade the district court that that's what happened. All we have to do is show it's an issue for the jury. Well, but your claim really is a retaliation claim. That is, that the complaints about discrimination were responsible for triggering the ultimate action. For me, the key factual conclusion of the district court was the one that the ultimate decision maker — was it this deputy warden, or I've forgotten his title — Mr. Munoz, was not aware of the complaints having been made by your client and his colleague. And so his action, his ultimate decision, couldn't have been based on retaliation. He didn't know there was something to retaliate against. If that's the case, why isn't it as appropriate for summary judgment? Well, because it's sort of like the cat's paw analysis, where the — Munoz, although we believe there is evidence that he knew because White submitted a memorandum to Munoz prior to the discipline being imposed on — or Streik to Morrison delivered a memorandum to Munoz prior to the discipline being imposed on White. But it's sort of the cat's paw analysis because it's the actions of Panisi and Warren generating the discipline for retaliatory reasons that gave the information to Munoz. Munoz did not investigate the incident. He simply — he's taken the word of two officers who we believe are discriminating. And so therefore, he's not acting in a vacuum. He's acting because the two officers brought this information to him. So therefore, they're the two officers who are discriminating. Well, Munoz made his decision. Let's continue with the district court's premise that he was not aware of retaliation. I mean, a claim that in a prison, a corrections officer doesn't follow a direct order is a serious claim. I confess I was a little startled at the proposed punishment for that claim, but I think it reflects the concern by somebody who's acting as the warden that it's a problem if a corrections officer doesn't follow the order of his direct supervisor. In the abstract, that would be correct. But you have to look at what happened here. The form itself, it talks about an injury. It's an injury form for injury on the job. When Warren had an officer who actually had an injury, her back was hurting, he doesn't ask her to use the form. When he has an officer who is simply sick and has been asking to go home for several hours, he makes him go all the way across the yard to fill out this form, asking him to fill out the form. In and of itself was discrimination. In and of itself was an act of retaliation. But is that something that gives Mr. White an opportunity to be insubordinate and say, I'm not going to follow that order? I mean, from the warden's perspective, even bad orders are supposed to be followed, because prison discipline will break down if individual corrections officers have leave to decide which orders they're going to follow and which orders they're not. But a jury could find, in the absence of discrimination and in the absence of retaliation, White would have been called in and said, we know you were sick. You have an impeccable record. Even though you don't agree with this particular order, you have to follow orders in the future. They would not have suspended him. They would not have accused him of abandoning his post. They would not have taken his pay from him. This was way over the top for this type of behavior, given the fact that he was an impeccable officer with an impeccable record. Ultimately, the discipline was rolled back. So it may be, in the light of day, they decided a better course would be not imposing these sanctions. Well, I think the discipline was rolled back because there was no evidence that he had abandoned his post. The evidence is that his sergeant gave him permission to leave. So that's probably why the discipline was rolled back. But why would you discipline somebody like that for this type of violation? This was not an order that was given in the context of running the prison. This was not an order that was given in the context of treating an inmate. This was an order, we believe, was just to mess with him, just because he had complained about how he was being treated. And it's a jury question. I'm sure one person can think of it one way, another person can think of it another way, but it's still a jury question. And I do want to reserve five minutes of my time, but I want to bring up another point. I discussed the difference between the text of Title VII and the text of the Ninth Circuit on November the 19th, 2018, ruled that the causation issue in the 1981 case was a motivating factor. Was that African-American-owned media? Yes. I was going to ask you about that question, so I'm glad you're answering it. Yes. And that brings it even more persuasive because when you look at summary judgment, we're not just deciding whether or not if he had not done this, he would not have been disciplined. We're asking whether or not race or retaliation was a factor at all. And if it was a factor at all, and unless that case is overturned, if it was a factor at all, I've given you all of this evidence, I've given you a whole list of evidence which shows that these officers were upset. They were upset at White, they were upset at Morrison because they believed they were about to file charges against them, and Warren at least believed it was going to affect his ability to get promoted, it was going to affect his ability to get transferred, and he retaliated. Whether he had a legitimate reason to discipline White, maybe he did, maybe he didn't. But even if he did, that would not preclude or prevent us from having our day in court on whether or not retaliation was more likely than not what really motivated him to do what he did. And again, I would like to reserve a few minutes for rebuttal. Thank you. Counsel, I don't want to interfere with the plan you have for your remarks, but in as much, we didn't get a 28-J letter on it, but it was after the briefing that our court cited the case. How is that going to affect the outcome of this case, and do we have to send it back for consideration under African-American-owned media? You read my mind, Your Honor. That's what I wanted to start off with. Good. African-American media. And I apologize for not sending a letter brief on that. I found it. It's okay. African-American media does two things. It stands for the proposition that mixed-motive discrimination 1981 actions are permitted. But if you look at the facts of this case, that's not what we have here. Mixed-motive requires evidence to create, to rebut the legitimate non-discriminatory reasons for the adverse action. It has to be specific substantial evidence that the decision to impose adverse action was racially motivated. Now, what we have here is, as Judge Clifton notes, the decision-maker was Associate Order in Muniz, who, based on three memos, not just the ones by Lieutenant, then was, and also the sign-out sheet for that day, which objectively showed that the appellant disobeyed Sergeant Warren's orders. So if he'd gotten an order to tap dance and said, that's silly, I can't tap dance and it doesn't matter, is that a reason to give him discipline because he didn't tap dance? That's not a reason because that's not a facially valid reason to do so. But so don't we have the question here whether this form was a facially valid reason? I mean, it seems like some matter of fact whether the prison really required this form of people, and it seems that Officer White thought it was made up, and it seems like there's evidence in the record that it was made up. So at that point, because it seems that we have some people testifying, Ledbetter, Rodriguez, Panisi, that this isn't really a requirement, and then Pablano or Pablanco doesn't have to do it, isn't that enough to create a question about whether there really is a requirement in this prison that you fill out this form? No, Your Honor, and that's because, as this circuit has often held in Villaraimo versus Aloha Island Air, Manat versus Bank of America, you can be mistaken, so long as it's facially valid. But in the Island Air case, at least, they were mistaken about whether the rule had actually been violated, but they weren't mistaken about whether the rule existed. That's a different thing. I mean, if you're making up a rule, you say, all of a sudden tap dancing is a rule, we have to have a question, is that really a requirement in this prison? In the Air case, the question wasn't, is tap dancing really a rule? It was, did this person fail to tap dance? There's no dispute of fact that this rule exists. It's how the sergeants interpreted it. Okay, well, that might be, that's quibbling. I mean, does, so the form exists, but does it apply in a case where someone needs to leave early for a headache? Absolutely. That's how Sergeant Warren, that's how other sergeants have interpreted. Officer Prolanco herself, the comparator that Appellant uses, she herself had admitted, I was subjected to 7219 whenever I called in sick. But she wasn't in this. I wasn't here because I was requesting informal time off. But so what's the difference, I mean, they both wanted to leave early. She doesn't have to fill out the form. She has back pain. He has to fill out the form. He has a headache. I don't understand the difference. The key fact isn't about her back pain. The key fact is Sergeant Warren, she requested to use her ITO leave, not to go out sick. Can you tell me where in your brief you said that? Is that the distinction you told us to look at in the brief? Yes, absolutely. It's in the record. It's cited in my brief. I'd be happy to point it out to you. I might have missed your focus on that. Could you tell me where in the record this difference is and that that's the explanation? Yes. Five minutes. It's expert record 487. They're deposition experts of Vanessa Polanco. On line 18, it begins, question, was it your suggestion you take ITO? Answer, yes. Question, so you didn't ask to go home sick. Answer, right. Well, maybe back pain isn't sick. Okay. So where in your brief do you explain that the ITO leave doesn't require the form but some kind of form? I don't. Page 23 of the brief quotes this testimony. Right. And the point of my brief was the distinction isn't Vanessa Polanco, a Hispanic female officer, having back pain versus Officer White, a black officer complaining of migraines, which he never did mention to Sergeant Warren, by the way. He just said he was sick. The distinction is the form of the leave, the form of the request to go home. Polanco had pre-existing ITO leave, which Sergeant Warren knew about and said, fine, I will grant you this. And that's well within his discretion. But the key point. I'm sorry. So, I mean, this may be a point I just didn't understand in the brief. So you do quote this thing about she was sent home and not questioned about her illness, but the different type of leave, ITO leave. So you're saying that there's like different categories and the problem was they were in different categories? Right. I'm sorry. Sometimes we're so used to working in a bureaucracy. ITO leave in state employment parlance is essentially leave granted to you to use for any reason, so long as your supervisor approves it. It doesn't have to be sick leave. Now, there may be a different situation, which we don't have here, if Officer Polanco said, I'm sick. I need to take sick leave. And Sergeant Warren said, sure, go ahead. He didn't do that. He said she had ITO leave and that, in his mind, was a good faith distinction between what Officer White had requested. And it makes sense in the context because the context is this. Officer Polanco was supposed to be at that post. She requested ITO leave in which Sergeant Warren said, okay, I will have Officer White relieve you since he's on voluntary overtime and have an extra officer. Sure, you can go ahead. And after, only after he had granted Officer Polanco the ITO leave, Sergeant, excuse me, Officer White then confronts Sergeant Warren and said, well, I don't have to report to that because he mistakenly thought that for voluntary overtime, he gets to choose his post. Sergeant Warren then reminds him, no, I'm your supervisor right now and I'm telling you, report here. And in response to that, Officer White doesn't report there and says, I'm going home sick. That's the context in which Sergeant Warren says, well, go to the nurse's office, fill out that 7219 form, come back to me with your time sheet and I'll excuse you and you can go home. At no point did Sergeant Warren or Lieutenant Pinesi ever prevent Officer White from taking his sick leave. Even, and the record is clear, Officer White never did submit that 7219 form and that forms the basis of the notice of adverse action. That is what offended Associate Ward and Muniz when he looked at the memorandums, including that of Jessica Ramirez, and it showed that he disobeyed an order. And Muniz and other sergeants all said, yeah, we all interpret it differently. Sometimes we require 7219s because we want to make sure that you're safe to drive home for work. Sometimes it all has to do with some kind of illness, taking sick leave of some form. Let me ask you about the concern that this all would have been resolved at that level, but that the formal discipline, which went up the chain, perhaps to somebody who did not know about the discrimination complaint, but that it never would have gone up the chain, but for the animus or the response to the complaint of Warren and I've now forgotten the name of the other person. If that is true, there's never discipline up the chain because the complaint never gets to that point. I wouldn't necessarily agree with that proposition because there were other evidence aside from Warren and Pernice's memorandums. And sure, yes, the process unfortunately did have to go through a formal appeals process, but that's not the product of any animus. That's more the product of Associate Ward and Muniz's workload. I see. No, I'm really looking at before that. For this discussion, I'm accepting the proposition that Buenos did not know of the complaints that were supposedly the cause of the retaliation. But things happen in the workplace all the time that never actually get to the supervisor because they're worked out at that level. If a case can be made that Warren sends it up the ladder because he's mad at the retaliation, he's retaliating against the complaint of discrimination, wouldn't that make a viable cause of action? No, Your Honor. And the reason is, as Sergeant Warren testified at his deposition and as well as Lieutenant Pernice, their job as supervisors is to report, report wrongdoing. Another unit, Internal Affairs, their job is to investigate. And according to, as we have in Muniz's declaration, he had sent it up to IA for review. Is there any evidence or testimony that Warren or Pernice report everything that happens? I mean, the reality is that every time there are police officers that give you warnings, they don't give you tickets. And that's simply a lubricant that's necessary for functioning. I still have the concern that could it be the case that the actual formal reporting, at least part of the motivation for that, was the retaliation concern? I think, yes, insofar as if there is, which we don't have here, specific substantial evidence of some pretext. So, for example, if there was a valid comparator in which another white officer disobeyed orders and yet Warren and Pernice did nothing, we don't have that here. What we have here is one officer who undisputedly disobeyed an order and only one officer under these circumstances was disciplined. And that's the appellate. Well, the comparison that they say shows that it's false is this polento not being required to do the form. And it seems like Judge Clifton understood your argument, but I sure didn't from your brief. I think I've now found on page 25 a sentence that might be related to this ITO point where you say, At most, appellant has shown that appellee Warren distinguishes between pre-approved leave and sick leave or between illnesses and back pain. No site, nothing in the record to tell me that there are different policies about pre-approved leave and sick leave. You just read it to us, but I'm wondering whether this was in your motion for summary judgment that the real issue here was that polento, because they're pointing to polento as the pretext evidence. Did you say she was asking for a totally different type of leave? Here's the site that shows its ITO leave? Because you didn't do it in your brief, as far as I can tell. It's noted in the district court's order granting summary judgment, Your Honor. The appropriate comparator of a similarly situated person here isn't someone who... It's noticeably lacking because it's not about someone who was forced to do the 7219, because he wasn't... Excuse me. The appellant wasn't disciplined for not filling out a 72... The appellant wasn't disciplined for not filling out a 7219. It was an order. It's like, you fill out this form, come back to me, so I can sign you out. It was the combination of those two things. And so, when we look at appropriate comparators, we have to look at who was subjected to the adverse action. A 7219 form is not an adverse action because it doesn't change the terms and conditions of the employment. It just depends whether they're setting him up with a silly thing. I mean, if they tell him to tap dance and then he doesn't tap dance and they don't require someone else to tap dance, then now they've set up this false thing so then they can discipline him. I think that's his theory. And maybe it falls apart because actually there's no comparison because she was asking for a different kind of leave. So maybe that is the answer. I mean, your brief also says, or there was some difference between illness and back pain. That doesn't make any sense to me. So I thought that was the thrust of your argument, but I guess I misunderstood the sentence. I apologize, Your Honor. I was just throwing out hypotheticals. It could be because there's a difference between gender, which is not a Section 1981 claim. It could be all sorts of things that we can only speculate because we don't know. What we do know is that it's not based on race. Counsel, let me use your last 50 seconds. I'd like to have you go back to African-American-owned media. In the past, we've used interchangeably 1981 and Title VII. There's a grave doubt now after that case whether we can do that. Is that issue implicated in this appeal? Ultimately, no, because there's no evidence of any mixed motive. There's no evidence of any racial animus. The best argument and evidence that the appellant has are based on his own subjective belief that he was a target of race, retaliation, discrimination, and multiple levels of hearsay. But I direct you to Officer Pender's declaration because most of the hearsay statements were attributed to her having overheard comments made by Warren and Panisi. And yet, when she was deposed, not declaration, I apologize. When she was deposed, she flat-out denied any of that occurred. And her deposition testimony is evidence. It's admissible evidence. Multiple levels of hearsay are not. Well, as far as the 1981 or the 1981 and the Title VII issue, where were you proceeding in this case under which? I'm sorry? The Title VII and the 1981. What was the basis of your case here? The basis of our case Which statute? It's 1981, Your Honor. But under 1981, you know, I don't think African-American media eviscerates the jurisprudence that 1981 and Title VII are comparable. I think what African-American media stands for is essentially for mixed motive cases, that's permitted in Section 1981. But that's an issue not implicated here because there's no substantial specific evidence of any racial or retaliatory animus. So I'm found in the district court order. The district court order says the warrant explained the difference in treatment by noting that Polanco complained of back pain rather than illness. This explanation does not resolve the factual disagreement between witnesses over whether plaintiff was subjected to a standard protocol or something else. Is that where you think he talked about ITO leave? I don't without I don't recall if that's specifically it. That may be the reason why I put the difference between back pain and illness in my brief. But suffice to say what's undisputed is he had this good faith belief that there is some kind there was some kind of distinction between Polanco's leave and Officer White's leave. But isn't that a jury question whether it was a good faith belief? Not if it's only if it's specific substantial evidence of discriminatory or retaliatory animus which we don't really have here given the totality of the circumstances. If you look at all the evidence as a whole there just isn't it doesn't arise to the level of specific substantial evidence to rebut a discriminatory a non-discriminatory legitimate reason for the adverse action. And ultimately Warren was not the the decision maker on this. It was Associate Warren Munez who took not just Warren's memo but also Penici Ramirez's and also the timesheet and looking at the the penalty matrix and the CDC or DOMS. Thank you Counselor we've taken you over your time. Thank you. Your Honors when I began my argument I made the distinction between how Title 7 cases were decided prior to their being allowed jury trials and that language about specific and substantial evidence goes more toward the burden of proof in a trial. If for an example all you have is a person says I'm African-American I was discharged if that's what their prima facie case is and the defendant comes back with a legitimate non-discriminatory reason for the discharge at that point maybe he has to do a little bit more to show pretext. But if the issue is is there enough evidence for a jury to decide the case which we contend that is the only standard Title 7 or discrimination actions are no special form of action. The standards should still be the same. Can a jury look at these facts and decide the case plainest way and I say that it can. And you know during discovery and I put this in my reply brief at page 8 during discovery we specifically asked Warren what the distinction was. You know why the difference in treatment and if you look at the top of page 8 I asked him to explain it and he goes Officer Polanco told me her back hurt she didn't say she was sick and then I say and that's the distinction in your mind and he says yes. He didn't go on to say no this is different because she asked for a different type of leave. He was asked the question and this is the answer that he gave. A jury could believe that he's a liar. The jury could believe that he's just making this stuff up. Also if the form says report of injury and she has a hurt back and he's sick because he's having migraines how is it more persuasive that he would ask White to fill out this form and not Polanco. The reason is because But I'm not sure that's the discrimination claim you're pursuing here. That is the injury by being told to fill out a form which I think the complaint is he decided it was up to him to decide whether or not to comply with that order. Even if he were asked to fill out a form that she wasn't asked to fill out what's the cause of action that results from that? Because it's disparate treatment. But that itself wouldn't be an adverse employment action sufficient to bring a case, right? Right. And I would not The problems flow from his reaction to that and I may understand the reactions from a human being basis but as a corrections officer is it his job to decide which orders he's going to follow? It is not. But And he did not follow that order? He did not follow that order. But he And why isn't that a legitimate basis for discipline separate and apart from any claim of discrimination? It is a legitimate basis for discrimination in the abstract. But in reality given the sequence of events and I laid out the timeline in my brief beginning on July 3rd in reality it may be a legitimate reason to discipline but that wasn't the reason in this case. A jury could look at these facts and decide maybe that is a legitimate reason but that's not what was motivating Warren or Panisi in this case. To show that why don't you need someone else who violated an order who wasn't disciplined? If your evidence simply consists of I made a complaint he did this maybe you do but the difference is that Panisi and Warren are speaking about it. Oh I hear you are going to file papers or think we are racist. These things are being said after the fact. And he takes 21 days to come up with these disciplines and they do it on the same day. What are the odds of that happening? A jury could easily conclude that they did it because of the sequence of events that preceded it. This is not a big deal for an officer like officer White who was an exemplary officer. This is not a big deal for  officer like officer   was an  officer. This is not a big deal for an officer like officer White who was an exemplary officer. Thank you, counsel. Your time is up. Thank you for the helpful    submitted. Okay. The last case on calendar is the first case on calendar. The first case on calendar is the first case on              the third case on calendar. The fourthest case on calendar is the fourth case. The fifth case is the seventh
judges: Wallace, Clifton, Friedland